NOT FOR PUBLICATION                    [Docket Nos. 95, 105, & 110]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

## CAMDEN VICINAGE

```
_____
                              :
LINDA FRANULOVIC,             :   Civil Action No. 07-0539(RMB)
                              :
          Plaintiff,          :
                              :
     v.                       :   OPINION
                              :
THE COCA-COLA COMPANY,        :
                              :
          Defendant.          :
_____
```

**BUMB**, United States District Judge:

     This matter comes before the COURT upon a motion by the plaintiff, Linda Franulovic, (the "Plaintiff") for class certification, and a cross-motion by the defendant, the Coca-Cola Company, (the "Defendant") for summary judgment. Plaintiff initiated this action based upon her allegation that Defendant misleadingly marketed the soft-drink Enviga as a calorie-burning product. Plaintiff has alleged that, relying upon the apparent calorie-burning guarantee, she purchased Enviga, but nonetheless failed to lose weight. Plaintiff now seeks to represent a class of New Jersey residents who have purchased Enviga in this lawsuit. Citing Plaintiff's deposition testimony admitting that

1

she did not monitor her weight or calorie-intake while using Enviga, Defendant's motion for summary judgment contends that Plaintiff cannot establish an injury caused by Defendant.  For the reasons set forth herein, the COURT grants Defendant's motion for summary judgment and thus dismisses as moot Plaintiff's motion for class certification.  The COURT will therefore dismiss the complaint without prejudice.  Plaintiff may move pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) to alter the judgment and, pursuant to Federal Rule of Civil Procedure 15(a) to amend the complaint, in accordance with this OPINION.

**I. Factual Background**

Plaintiff brings this lawsuit pursuant to the New Jersey Consumer Fraud Act (the "CFA").  She avers that the Defendant engaged in "illegal, fraudulent and deceptive business practices that harm[ed] New Jersey consumers" in relation to the sale of Enviga, "a canned soft drink containing a proprietary combination of caffeine and an extract of green tea called 'epigallocatechin gallate' or 'EGCG.'" (3d Amd. C.A. Compl. ¶¶ 1, 15.)  Plaintiff contends that Enviga is marketed as a "weight-loss or weight control product, based on the novel claim that drinking three cans of Enviga (over a quart) every day over a lengthy period of time will actually cause the expenditure of far more calories than the product contains." Id. at ¶ 18.  Plaintiff started drinking Enviga after reading the label's representations about

2

calorie burning.  Id. ¶ 44.  She escalated her consumption to three cans daily based upon Enviga advertising touting the burning of 60 to 100 calories daily by those who drink three cans.  Id. ¶ 45.  (Oral Arg. Tr., Mar. 20, 2009, at 79:24-80:7.) She stopped drinking Enviga after "seeing a television story that refuted Defendant's claim that drinking three cans of Enviga a day would help people lose weight." (3d Amd. C.A. Compl. ¶ 47.) She now believes that the weight-loss representations for Enviga cannot be substantiated because the "small number of studies that exist are conflicting and inadequate to substantiate the representations." Id. at ¶ 19.  The complaint cites several representations made by advertisements for Enviga that tout its weight-loss properties and she avers that such claims are based upon a single study that is "meaningless." Id. at ¶¶ 21-23.  She complains that there is no substantiation for Enviga's claims because there is no evidence that the product has any effect on weight for the majority of adults who are not young, healthy and thin and that there is "no evidence at all that Enviga has any positive effect of any kind on free-living consumers." Id. at ¶¶ 28-29.

## II. Procedural Background

The procedural history of this case has been complicated but it is important to the disposition of the motions now pending. An entity called the Center for Science in the Public Interest

("CSPI") initially filed the complaint in February 2007 [Docket No. 1], which it amended in April 2007 [Docket No. 4]. In response to a motion to dismiss asserting that CSPI lacked standing, the complaint was again amended in August 2007, adding Linda Franulovic as a plaintiff and voluntarily dismissing CSPI. [Docket Nos. 41, 42.] At the request of all parties, the case was consolidated with two other cases, <u>Simmens v. Coca-Cola Co., et al.</u>, Civ. No. 07-3855, and <u>Melfi v. Coca-Cola Co., et al.</u>, Civ. No. 07-0828, [Docket No. 46], which have both since settled.

In August 2007, Defendant moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). In its briefing on this motion, Defendant argued as one basis for dismissal that the complaint did not "explain how th[e] alleged [CFA] violation resulted in an ascertainable loss to Franulovic or anyone else." (Def.'s Br. 10 [Docket No. 43].) <u>Notably, Plaintiff's Opposition Brief failed to address this basis for dismissal.</u> (Pl.'s Br. 5-6 [Docket No. 51].) Accordingly, the COURT dismissed the complaint for failure to allege an "ascertainable loss," as required by the CFA. [Docket Nos. 60, 61.] The COURT explained, "It is . . . unclear what, if any, 'cognizable and calculable claim of loss due to the alleged CFA violation' Franulovic suffered. Therefore, because Franulovic has failed to adequately allege an ascertainable loss, the CFA claim will be dismissed." (Op. at 26 [Docket No. 60] (citing

<u>Solo v. Bed Bath & Beyond, Inc.</u>, Civ. No. 06-1908, 2007 WL
1237825, *10 (D.N.J. April 26, 2007); <u>Thiedemann v. Mercedes-Benz</u>
<u>USA</u>, 183 N.J. 234, 249, 872 A.2d 783 (2005)).)

Plaintiff then moved to again amend the complaint, which
Defendant opposed.  On March 10, 2008, the COURT heard oral
argument on the motion.  At that time, the COURT identified
substantial confusion over the substance of Plaintiff's
allegations.  Plaintiff's arguments had conflated two different
types of "ascertainable loss": first, that Plaintiff had used
Enviga in reliance upon an implied promise of weight-loss, but
failed to lose weight; and second, that Plaintiff had purchased
Enviga in reliance upon an implied promise that the product burns
calories, when in fact it does not.  (Oral Arg. Tr., Mar. 10,
2008, at 84, 96.)  The former "loss" is the failure to lose
weight; the latter "loss" is the waste of money purchasing an
ineffective product.  Nowhere in the complaint, however, did
Plaintiff allege a loss of spending money that she would not have
spent but for the misrepresentation.  (Indeed, this particular
alleged "loss" does not appear in any of the preceding iterations
of the complaint either.)

As the COURT said at the March 10 hearing, and repeated in
its subsequent ORDER, the complaint as then-written actually
alleged only the former sort of "loss" -- the failure to lose
weight.  At the hearing, the COURT stated:

> I want the complaint to be clear.  Which avenue are you
> pursuing? If you're still pursuing both, then let's make
> it clear. . . . I'm ruling that the implied weight loss
> claim survives.  I am not convinced that the calorie
> burning claim, if you will, survives because there's been
> no allegation that Enviga did not burn calories.

(Oral Arg. Tr., Mar. 10, 2008, at 96.)  Accordingly, the COURT
ruled that if Plaintiff wished -- more than a year into the
litigation -- to pursue her claim premised upon a "calorie-
burning" theory (that is, Enviga does not in fact burn calories
and thus consumers are wasting their money on an ineffective
product), she would have to move for leave to amend her
complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2)
and Local Civil Rule 7.1(f).[1]  (Order, Mar. 10, 2008, at 2.)
However, as the complaint had already alleged a claim premised
upon Plaintiff's failure to lose weight (the so-called "weight-
loss claim"), the COURT permitted the automatic filing of an
amended complaint resting upon that claim.  <u>Id.</u>  The COURT's
March 10, 2008 ORDER stated,

> Plaintiffs' motions for leave to amend are **denied without
> prejudice** -- Plaintiffs . . . will be given until April
> 14, 2008, to either file an amended complaint alleging a
> so-called "weight loss claim," as directed, or move for
> leave to file an amended complaint alleging, in addition
> to the approved weight-loss claim, a so-called "calorie
> burning" claim . . . .

---

[1] The purpose of requiring a motion for leave to file is to
give the COURT an opportunity to consider, with the benefit of
briefing from the parties, whether granting leave to amend would
be prejudicial, futile, or otherwise unwarranted. <u>See</u> <u>Bell v.
Guardian Life Ins. Co.</u>, 2008 WL 4852840, slip op. at *2-3 (D.N.J.
Nov. 6, 2008).

(Order, Mar. 10, 2008, at 2.)  Plaintiff opted not to move to
amend, and, pursuant to the COURT's ORDER, filed an amended
complaint on April 14, 2008 alleging only the weight-loss claim.
[Docket No. 79.]  That amended complaint, styled the "Third
Amended Class-Action Complaint," is Plaintiff's most current
pleading to date.  Notably, although Plaintiff did not move to
amend pursuant to the March 10, 2008 ORDER, and thus opted to
pursue only a claim premised upon her failure to lose weight, the
Third Amended Class-Action Complaint included language addressing
the other type of loss referred to above (the absence of which
was fatal to the earlier complaints, as discussed by the COURT on
March 10, 2008).  Under the heading "Facts as to Franulovic",
Plaintiff alleged:

> Franulovic's ascertainable loss is not that she failed to
> "burn calories," but that she bought a product she would
> not have purchased but for the deceptive and misleading
> advertising, and that she did not receive the benefits
> [Defendant] promised in its labeling and marketing of
> Enviga.

(3d Amd. C.A. Compl. ¶ 54.)  Because the Plaintiff failed to move
to amend her complaint, Defendants, understandably, assumed that
Plaintiff had abandoned her calorie burning/loss of money claim.
(Oral Arg. Tr., Mar. 20, 2009, at 53:18-25, 56:1-2.)

    The parties proceeded to conduct discovery on the matter of
class certification.  In October 2008, Plaintiff filed a motion
for class certification. [Docket No. 95.]  In January 2009,
Defendant filed a motion for summary judgment. [Docket No. 105.]

Plaintiff replied substantively to the summary judgment motion, but sought a continuance to conduct further discovery on the merits. [Docket Nos. 110-11.] The COURT heard oral argument on these matters on March 20, 2009. [Docket No. 117.]

## III. Legal Standard

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'"  Saldana v. Kmart Corp., 260 F.3d

8

228, 232 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).

**IV. Discussion**

    **A. Motion for Summary Judgment**

    The COURT first addresses Defendant's summary judgment motion, because a grant of summary judgment dismissing Plaintiff's claims will render moot the motion for class certification.  See Loatman v. Summit Bank, 1997 WL 809772, slip op. at *10 (D.N.J. Aug. 29, 1997); see also Kremens v. Bartley, 431 U.S. 119, 132-33 (1977).

    Pursuant to the COURT's March 10, 2008 ORDER, discussed supra, the only claim remaining in this case is premised upon Plaintiff's allegation that she failed to lose weight while drinking Enviga, despite Defendant's implied promise that drinking Enviga would facilitate weight-loss.  Relying upon admissions by Plaintiff in deposition testimony, Defendant contends that summary judgment is proper because Plaintiff cannot demonstrate that she, in fact, failed to lose weight, nor that any failure to lose weight can reasonably be attributed to the inefficacy of Enviga.

    A plaintiff bringing a CFA claim must establish three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557, 964

9

A.2d 741 (2009) ("Each of the elements . . . is, without any question, a prerequisite to suit."). Here, Defendant contends that Plaintiff cannot establish the latter two elements: ascertainable loss and causation by Defendant.

The "ascertainable loss" element demands that the "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Id. at 558 (citing Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245, 872 A.2d 783 (2005)). In other words, the plaintiff's claim must rest upon an actual injury that she experienced; a hypothetical injury that, under other circumstances, she might have experienced based upon the defendant's wrongdoing is insufficient. See, e.g., Thiedemann, 183 N.J. at 251-52 (consumer whose vehicle repairs were performed under warranty at no cost did not sustain a loss); Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 n.4, 541 A.2d 1063 (1988) (customer who never purchased a product based upon fraudulent loan application suffered no loss). However, any lost "benefit of [the] bargain," even if relatively minor, will suffice to establish this element. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11, 860 A.2d 435 (2004)) (loss of out-of-pocket expenses establish ascertainable injury).

To be clear: the only "ascertainable loss" now before the COURT is Plaintiff's failure to lose weight after consuming

Enviga in the advertised quantities.[2]  To prevail on summary
judgment, Defendant must establish that, viewing "all of the
inferences which could reasonably be drawn from the evidentiary
materials of record . . . in the light most favorable to the
plaintiff, no reasonable jury could find in the plaintiff's
favor."  Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 362
(3d Cir. 2008).  In other words, Defendant contends that based
upon the evidentiary materials of record, and making all
reasonable inferences in Plaintiff's favor, no reasonable juror
could find that Plaintiff failed to lose weight, nor that her
failure to lose weight, if any, was caused by the inefficacy of
Enviga.

     Plaintiff alleges that she began drinking Enviga three
times daily in February 2007, and continued that level of
consumption for approximately three months, based upon Enviga's
advertising that consumers who drink three cans every day will
shed 60 to 100 calories.  (Oral Arg. Tr., Mar. 20, 2009, at
12:13-25, 79:24-80:7.)  In her deposition, however, Plaintiff
testified that she did not know how much she weighed at the time
she began using Enviga as a weight-loss aid:

     Q.   Okay.  And how much did you weigh in February of

---

     [2] To the extent that Plaintiff's complaint might be
construed to plead another ascertainable loss, (3d. Amd. C.A.
Compl. ¶ 54), such a claim is not properly before the COURT,
pursuant to its March 10, 2008 ORDER.  See supra Part II
(discussion of Procedural History).

                              11

```
                    2007?
      A.    I don't know, approximately, I don't weigh myself.
```

(Franulovic Dep. 32:13-16.)  She further testified that she did

not weigh herself during the period of her Enviga use.

```
      Q.    For how long did you drink three cans of [E]nviga
            per day?
      A.    Maybe two[-]and-a-half months.
      Q.    How many times did you weigh yourself during that
            time period?
      A.    Zero.
```

(Franulovic Dep. 84:7-12.)  Plaintiff further testified that she

was not attentive to her calorie intake during that period.

```
      Q.    Is it fair to say that while you were drinking
            [E]nivga you didn't know how many calories you were
            taking in on a daily basis?
      A.    Yes.
```

(Franulovic Dep. 34:14-17.)

```
      Q.    [Starting in February 2007,] Were you trying to eat
            foods that you believed had a lower caloric content
            than alternative foods, than foods you weren't
            eating?
      A.    No.  It --
      Q.    Go ahead.
      A.    I don't care about calories, I care more about fat
            and protein.
      Q.    So in your personal diet, the way you believe you
            either lose weight or don't gain weight is to
            control the amount of fat and protein you're taking
            in?
      A.    Yes.
```

(Franulovic Dep. 45:18-46:3.)

```
      Q.    And I believe you told me earlier that you don't
            know, and again we're taking about in 2007, you
            don't know how many calories you were taking in or
            trying to take in on a daily basis, right?
      A.    Right. . . .
      Q.    On a given day that you drank [E]nviga, how would
            you know that you didn't eat or drink something
```

            that otherwise put you, for the day, for the total
            day, in a situation where you weren't reducing your
            overall calories?

A.    I don't know.

(Franulovic Dep. 90:16-91:14.)  In addition to her regular

exercise regimen, which remained unchanged from before she began

drinking three cans of Enviga daily, Plaintiff's only other

weight-loss measure was to stop eating "Mike & Ike" candies.

Q.    In February 2007 how often did you exercise?
A.    Four times a week . . . .
Q.    So in February 2007 these habits that we've talked
        about, your eating and your exercise, were those
        new habits for you or things that you had been
        doing for awhile?
A.    Things that I had been doing for awhile.

(Franulovic Dep. 32:2-12.)

Q.    Do you believe that reducing caloric consumption
        can result in losing weight?
A.    It can, yes.
Q.    And that's commonly referred to as dieting?
A.    Yes.
Q.    You understand and understood in February of 2007
        that one thing people do to lose weight is reduce
        caloric consumption?
A.    Yes.
Q.    And have you ever done that yourself?
A.    Yes.
Q.    Were you doing that in February 2007?
A.    Yes.
Q.    And how were you trying to reduce your caloric
        consumption?
A.    Cutting out the Mike and Ike's.
Q.    Anything else?
A.    No.

(Franulovic Dep. 43:17-45:9.)

In spite of the above-quoted testimony, Plaintiff avers that

she is entitled to the reasonable inference that she did, in

fact, lose weight, because, during the period of Enviga use, (1) she gained five pounds, and (2) she knows this fact because her pants fit more tightly at the end of the two and one-half month period.  Premised upon the dubious inference that Plaintiff did, in fact, fail to lose weight, Plaintiff avers that she is entitled to the further inference that this injury was caused by the inefficacy of Defendant's product.  This causal link is a reasonable inference, Plaintiff maintains, because her diet, exercise, and other weight-loss routine remained constant before and during this short period of Enviga use.  Thus, Plaintiff's failure to lose weight is attributable to Enviga, the argument goes, because all other variables remained constant.

The COURT disputes the reasonableness of these inferences. First, any number of logical reasons could account for Plaintiff's experience of more tightly fitting pants.  Given Plaintiff's admitted failure to monitor her calorie-intake and weight, it is not reasonable to infer that Plaintiff failed to lose weight merely because her pants felt more snug.[3]

_____

[3] Plaintiff rightly notes that dieters often gauge weight-loss, in part, by how comfortably their pants fit.  It does not follow, however, that this indicator <u>alone</u> justifies a reasonable inference of weight-loss or -gain.  Dieters may reasonably infer weight-loss from looser-fitting pants because this one indicator is considered together with calorie-counting and other weight-loss measures -- measures that are absent here.  <u>See</u> <u>Anderson</u>, 477 U.S. at 252 (holding that the "mere existence of a scintilla of evidence" in support of Plaintiff's theory will not, without more, defeat summary judgment); <u>accord</u> <u>Queer v. Westmoreland</u> <u>County</u>, 296 Fed. Appx. 290, 294 (3d Cir. 2008) (isolated

Second, even accepting as true that Plaintiff did fail to lose weight, the COURT rejects as unreasonable the inference that this failure is causally attributable to Enviga's inefficacy. Because Plaintiff was not monitoring her calorie intake during the relevant two and one-half month period, her slight weight-gain, if it occurred at all, is more likely attributable to subtle changes in her diet, slightly less exercise, or natural weight fluctuations.  The COURT is mindful that Enviga purports to cause the loss of only 60 to 100 calories daily, or the equivalent of approximately one apple.  Notwithstanding Plaintiff-counsel's insistence that Plaintiff's diet remained rigidly consistent during the relevant period, (Oral Arg. Tr., Mar. 20, 2009, at 66:23-67:4, 71:17, 79::13-16), Plaintiff testified that her diet did indeed vary, including the inconsistent consumption of fruit juice and coffee (with soy milk), as well as varying snack-foods.[4]  (Franulovic Dep. 28:19-29:5, 31:7-16.)  Plaintiff also testified, repeatedly, that she

---

circumstantial evidence supporting non-movant's claim is insufficient to defeat summary judgment).

[4] By way of comparison, the COURT notes that one Snapple fruit-juice contains 220 calories, one cup of Kashi Go-Lean cereal contains 140 calories (excluding milk or a milk-substitute), one Chiquita banana contains 110 calories, a one-serving container of Yoplait yogurt contains 170 calories, and four tablespoons (a quarter-cup) of Silk soy-milk coffee creamer contains 60 calories, according to those products' websites.  See www.snapple.com; www.kashi.com; www.chiquita.com; www.yoplait.com; www.silksoymilk.com (all visited in April 2009). Plaintiff testified to eating these types of food irregularly.

did not monitor her calorie intake.  Given these facts, and

taking as true that Plaintiff's pants fit more tightly, the

inferences that Plaintiff failed to lose weight, and that Enviga

caused her failure to lose weight, are patently unreasonable.

Plaintiff's claims are based on conjecture and speculation.  This

is insufficient to defeat a motion for summary judgment.

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252

(3d Cir. 1999).  On this basis, the COURT will grant summary

judgment as to this claim.[5]

## B. Motion for Class Certification

Having found that Plaintiff's only claim in this action

should be dismissed, the pending motion for class certification

is rendered moot.  See Loatman v. Summit Bank, 1997 WL 809772,

slip op. at *10 (D.N.J. Aug. 29, 1997); see also Kremens v.

Bartley, 431 U.S. 119, 132-33 (1977).

## C. Leave to Amend

At oral argument on the motions herein considered, on March

20, 2009, Plaintiff-counsel stated that he had misunderstood the

COURT's March 10, 2008 verbal instructions and accompanying

---

[5] In its response to Defendant's summary judgment motion,
Plaintiff moved for a continuance pending further discovery on
the premise that discovery from Defendant could aid its response
to the summary judgment motion.  As the basis for Defendant's
summary judgment motion is that Plaintiff cannot prove the injury
she alleges, the COURT does not understand how discovery from
Defendant could aid Plaintiff in addressing this matter.  (See
Oral Arg. Tr., Mar. 20, 2009, at 77-79.)  Accordingly, the motion
for a continuance will be denied.

ORDER.  (Oral Arg. Tr., Mar. 20, 2009, at 58:25-59:5.)  At the
March 20, 2009 oral argument, Plaintiff-counsel indicated that
Plaintiff could plead a viable claim within the parameters the
COURT had set in March 2008.  Specifically, he indicated that
Plaintiff could allege, upon information and belief, that Enviga
does not burn calories as advertised, thus causing the
"ascertainable injury" that Plaintiff wasted money by purchasing
the product in reliance upon misleading advertising.  It is not
at all clear to the COURT why Plaintiff did not move to amend
pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local
Civil Rule 7.1(f), as the Court had ordered.[6]  Although it does
bear noting that the unapproved insertion of the "wasting money"
language in the latest amended complaint seems to convey that
Plaintiff realized that she could not substantiate this
ascertainable loss, but nonetheless wished to include it

---

[6] At oral argument, Plaintiff-counsel suggested that their
confusion stemmed from the COURT's October 2007 dismissal of the
complaint.  To be clear, the theory that Plaintiff's
"ascertainable loss" was wasting money in purchasing an
ineffective product did not appear in any of the various
iterations of Plaintiff's complaint until the most recent
amendment (when Plaintiff added it in disregard of the COURT's
explicit instruction that she move to amend).  Nor did Plaintiff
argue this theory of loss in her briefing on the August 2007
motion to dismiss.  (Pl.'s Br. 5-6 [Docket No. 51].)  However, to
the extent the COURT's October 25, 2007 OPINION suggested to
Plaintiff that she could not raise a claim based upon the
"ascertainable loss" of wasted money on an ineffective product,
the opportunity, now, to move to amend the judgment and to amend
the complaint would remediate this misunderstanding.  (In oral
argument, Defendant suggested that it might not oppose such a
motion.  (Oral Arg. Tr., Mar. 20, 2009, at 63.))

generally among her allegations.  Whatever the reasons for Plaintiff's failure to comply with the COURT's March 10, 2008 ORDER, if Plaintiff wishes to plead this claim at this late date, she may move to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e) or 60(b), and to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a).  See Koronthaly v. L'Oreal USA, Inc., No. 07-CV-5588, 2008 WL 4723862, slip op. at *3 (D.N.J. October 24, 2008) ("[A] plaintiff seeking to amend a complaint after its dismissal must move to alter or amend the Court's original judgment.  This can be done pursuant to Fed. R. Civ. P. 59(e) or 60(b) . . . [and] the plaintiff can seek to amend her Complaint pursuant to Fed. R. Civ. P. 15(a).").

Accordingly, the COURT will dismiss the complaint without prejudice, so Plaintiff may file such a motion.

**V. Conclusion**

For the reasons stated herein, the COURT will grant Defendant's motion for summary judgment and dismiss the complaint without prejudice.  Plaintiff may move to alter the judgment and amend the complaint consistent with this OPINION.  An appropriate ORDER will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: April 16, 2009

18